UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

| | | |
|---|---|---|
| OLIVER HINKLE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3: 09-56-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| KENTUCKY DEPARTMENT OF | ) | **MEMORANDUM OPINION** |
| CORRECTIONS, et al., | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

**I.**

*Pro se* Plaintiff Oliver Hinkle, a state inmate, is currently confined at the Eastern Kentucky Correctional Complex ("EKCC") in West Liberty, Kentucky. On November 17, 2009, Hinkle filed suit against the Kentucky Department of Corrections ("KDC"), Dr. Ron Everson, and other defendants based on claims that his Eighth Amendment rights were violated by virtue of substandard medical care and treatment provided during his period of incarceration. [Record No. 2; Complaint] The matter is currently pending for consideration of Defendant Everson's motion for summary judgment. [Record No. 24; Memorandum in Support of Motion for Summary Judgment]

As outlined in the medical records attached to the defendant's supporting memorandum, Dr. Everson treated Hinkle on two occasions: May 19, 2009, and July 21, 2009. [Record No. 24-2; pp. 48-53] On the first occasion, Dr. Everson treated Hinkle for claims of abdominal

discomfort and burning radiating into Hinkle's chest. Treatment records indicate that, by July 21, 2009, Hinkle's claims of abdominal discomfort were resolved. [*Id.*, pp. 51-53] There is no indication that Dr. Everson provided any further treatment regarding this or other medical claims made by Hinkle during his period of incarceration. Having reviewed all medical records, as well as the authorities cited by Everson in support of his motion, the Court finds that his arguments are well-taken. Accordingly, Dr. Everson's motion for summary judgment will be granted and the claims asserted against him will be dismissed, with prejudice.

**II.**

According to the plaintiff, the defendants were medically indifferent to his serious medical conditions beginning June 30, 2008, and continuing through the date that his complaint was filed. However, to put his claims in proper context, it is necessary to discuss Hinkle's medical condition and treatment prior and subsequent to June 2008.[1]

In 1994, Hinkle was diagnosed as having bilateral inguinal hernias. During a September 2007 examination, Hinkle complained that pain related to the hernias worsened due to coughing and constipation.[2] As a result, Dr. Bergman directed that Hinkle be placed on the bottom floor of his housing unit. Hinkle made a similar complaint during an examination on January 31, 2008. At that time, he was treated with a fleet enema.

---

[1] The memorandum filed in support of Defendant Everson's motion for summary judgment contains an excellent summary of Plaintiff Hinkle's medical history. [Record No. 24-1; pp. 4–7] The Court's synopsis of that history is taken largely from Everson's supporting memo.

[2] Hinkle's medical records indicate that he suffers from chronic constipation.

Hinkle received an annual physical examination on March 25, 2008. Medical records generated from that examination indicate that the plaintiff did not have any significant complaints. Hinkle's hernias were noted as being easily reducible (*i.e.*, moved back into place with the use of a bilateral truss). Further, the plaintiff denied any rectal bleeding and declined rectal examination. However, by July 14, 2008, Hinkle complained that, within the past year, he had two episodes of rectal bleeding during bowel movements. Based on those complaints, Hinkle was prescribed suppositories and sodium tablets for "probable internal hemorrhoids." [Record No. 24-2; p. 16] The records further indicate that, if bleeding persisted with bowel movements, further study might include a gastroenterology consult or colonoscopy. Again, Hinkle's hernias were noted to be reducible. [*Id.*, pp. 16-18]

During an August 14, 2008, examination, Hinkle claimed to have abdominal bloating and constipation which increased his hernia discomfort. Medications prescribed for this condition were helpful in providing some relief. [*Id.*, pp. 19-21] On October 3, 2008, Hinkle received an additional medical assessment and provided a history of constipation, gas and indigestion dating back several years. At that time, he asserted that the truss was not helping. However, he denied noticing blood in his stool or urine. In addition to providing further instructions on wearing his truss, and to refrain from heavy lifting, pushing or pulling, Hinkle was prescribed a number of medications for gas and constipation (*i.e.*, Mylicon, Metamucil and suppositories). [*Id.*, pp. 22-25]

Hinkle was again examined in December 2008 after reporting a feeling of a "pop" in his stomach and complaining of pain in his abdomen, groin and legs. Following examination on

December 18, 2008, Hinkle was given Tylenol and placed in the infirmary for observation. [*Id.*, pp. 26-27] According to progress notes dated December 23, 2008, Hinkle asserted that his hernias became more painful after he was transferred to a different cell location approximately seven to ten days earlier.[3] These notes further indicate that Hinkle was placed in a lower level cell in the same dormitory. [*Id.*, p. 29] The medications prescribed earlier were also continued.

On March 29, 2009, Hinkle was admitted to the medical unit due to complaints that he had experienced "black and tarry" bowl movements. He also complained of pain in his umbilical abdomen and a "cutting" pain in his lower left abdomen. The plaintiff was advised to inform the nurse of his next bowel movement so that a fecal occult blood test could be obtained. Subsequent testing were negative for blood in his stool. [*Id.*, pp. 33-47] Hinkle was discharged from the infirmary on April 1, 2009. By April 4, 2009, Hinkle's constipation had improved after a double dose of fiber laxative.

Defendant Everson first evaluated Hinkle on May 19, 2009, following claims of abdominal discomfort and burning which he claimed radiated into his chest. [*Id.*, pp. 51-53] After noting that Hinkle had previously responded well to Zantac for similar claims, he was given another trial dose of the medication and advised to follow-up with medical personnel in approximately one month. Hinkle returned on July 21, 2009, for his second (and last) visit with Dr. Everson. Medical records indicate that, by this date, Hinkle's abdominal discomfort had resolved. [*Id.*, p. 53]

---

[3] Hinkle also claimed that his wool blanket caused a rash on his shoulders. As a result of this complaint, he was given a cotton blanket.

Although Hinkle was not examined or treated by Dr. Everson after July 21, 2009, he did receive treatment from other medical care providers at EKCC prior to the filing of this civil action. Hinkle was examined on August 20, 2009, and again on September 24, 2009, for claims of back pain resulting in insomnia. And on October 8, 2009, he was treated for a dry cough and generalized low back pain. Progress notes indicate that Hinkle requested stronger pain medication at the time of this examination, but that request apparently was denied. [*Id.*, pp. 54-60] This civil action was filed approximately six weeks later. Following the filing of his complaint, the plaintiff was brought for a medical appointment in a wheelchair, complaining of pelvic pain and an increase in chronic constipation. Again, medical records reflect that Hinkle's hernias were not tender and were still reducible with the use of a truss. Hemoccult was also negative. Hinkle's symptoms were attributed to acute prostatitis (bacterial infection of the prostate gland). [*Id.*, pp. 61-71]

By March 25, 2010, Hinkle stated that his hernias were not bothering him and he was not wearing a truss. Further, he denied rectal bleeding on March 25, 2010, and again on March 31, 2010. [*Id.*] During an annual physical examination on August 20, 2010, Hinkle refused a rectal examination. Finally, on January 8, 2011, Hinkle was examined for complaints of shortness of breath and swelling of his lower abdomen. The plaintiff's medications were refilled and he was advised to return, as necessary. [*Id.*, pp. 72-80]

### III.

Although Hinkle filed a formal grievance concerning his medical care and treatment on February 27, 2009, that grievance centers on the refusal to surgically repair his hernias, as

opposed to the medical treatment provided by Defendant Everson. In describing his complaint in Grievance No. 09-258, Hinkle asserted that:

> I was diagnosed with a double hernia and have worn a truss for over a year. I went to medical on 6-30-08 and was sent away without seeing the doctor. No follow-up appointment was set. I have severe bowel problems with passing of blood and chronic pain. The pain is constant and continues to this day. I believe the medical staff are showing a deliberate indifference to my medical needs by their continuing refusal to treat my medical condition. Sometime in February 2009 I went to medical responding to an appointment I received through the mail and was denied access to a medical doctor. The staff rescheduled the appointment. The follow up was rescheduled to March 3rd, 2009. I missed this appointment because I was at court call. A follow appointment was made for March, 13th, 2009. I went to that appointment, I was not seen by a doctor and was told by a male staff member, who took me into the offices to check vitals, that I would be rescheduled. The check of vitals was not done and I was told I would be rescheduled for another appointment. This is an ongoing, documented medical problem that the medical staff of EKCC has been aware of for over two (2) years. As of March 26th, 2009 no further appointment has been made. I have not been able to get medication to relieve symptoms of this medical problem and the staff has told me to buy over-the-counter medication from the canteen. I am indigent. The hernia began as a small protrusion and have since enlarged to an alarming size. I have intestinal problems causing problems with my bowel movements. I am pale and drained of energy and I am in a condition of chronic fatigue due to this hernia. The medical staff of EKCC is aware of and has known of my medical problems for 2 years. This condition is so severe that I have to manually remove my stool by hand. I am unwell physically and need treatment for these chronic medical problems. EKCC has drawn this out for so long that the anxiety the situation causes me affects my thinking and decision making abilities in an adverse way. My health deteriorates, my hernia worsens yet the medical staff of EKCC has failed [to] meet my medical needs. This problem will not cure itself. I request to see a doctor and have the necessary steps taken to have these chronic medical conditions remedied.

[Record No. 24-3; pp. 2, 5]

Dr. Bergman provided the following response to the KDC:

Mr. Hinkle's inguinal hernias are reducible in nature. A truss has been used to stabilize each hernia. Stool [samples] have been obtained, and rectal exam on 7/14/08 were negative for occult blood. . . .

[*Id.*, p. 2]

Hinkle was not satisfied with Dr. Bergman's response and appealed the decision refusing surgery to the Health Care Grievance Committee at EKCC. His appeal dated May 14, 2009, states:

> It has been three weeks since the doctor has seen me. I am in constant pain from the hernia. I am not receiving any pain medication. I request the medical department to give me something for this pain and set an appointment so surgery can be done to remove the hernias. [And] any other relief I am entitled.

[*Id.*, p. 3] By letter dated July 6, 2009, Dr. Scott Haas, Medical Director for the Justice and Public Safety Cabinet, Department of Corrections, advised Hinkle that his grievance had been denied. [*Id.*, p. 7]

In summary, the medical and other records attached to Defendant Everson's motion for summary judgment demonstrate that Hinkle's chief health complaint concerns the failure of the KDC to treat his complaints of pain and surgically repair his hernias, as opposed to providing other treatment for this condition. It is undisputed that, while Dr. Everson provided treatment for Hinkle's complaints of acid reflux during the time he was seeking additional treatment for his hernias, Dr. Everson did not provide treatment for Hinkle's hernias and did not consult or make the final decision that Hinkle's hernias should not be surgically repaired.[4]

### IV.

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

---

[4] For purpose of analyzing the present motion for summary judgment, the Court assumes that Hinkle's inguinal hernias could be repaired surgically.

R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A genuine dispute as to a material fact exists if there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In other words, the determination must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

The moving party initially bears the burden of informing the court of the basis for its motion. *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002) (citing *Celotex*, 477 U.S. at 323). The movant does so by bringing forward the relevant portions of the record which establish the absence of a genuine issue of material fact. *Id.* Once the movant has satisfied its burden, the nonmoving party must go beyond the pleadings and produce specific evidence to demonstrate that there is a genuine issue of material fact. *Id.* The nonmoving party must do more than cast some "metaphysical doubt" on the material facts. *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). He must present significant, probative evidence of a genuine issue in order to defeat the motion for summary judgment. *Id.* In reviewing the motion, the Court must view all facts and inferences in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587.

Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Here, sufficient time has been provided for discovery;

however, Plaintiff Hinkle has refused to comply with discovery requests and orders concerning his discovery obligations. Therefore, he is foreclosed from providing information contrary to the medical records and evidence submitted by Defendant Everson.

**V.**

To establish a viable claim of inadequate medical care and/or treatment under the Eighth Amendment, a prisoner/plaintiff must offer some evidence that the particular defendant acted, or failed to act, with "deliberate indifference to serious medical needs." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002). Thus, in the present case, to defeat Dr. Everson's motion for summary judgment, Hinkle must establish "serious medical needs" and that Dr. Everson was "deliberately indifferent" to those needs.[5]

Deliberate indifference is "more than mere negligence, but 'something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *Foy v. City of Berea*, 58 F.3d 227, 232 (6th Cir. 1995) (quoting *Farmer*, 511 U.S. at 835). It may be shown by prison doctors "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104–05. Further, deliberate indifference contains both objective and subjective components. *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001). Under the objective component, the Court must determine whether the alleged deprivation was sufficiently serious. The subjective

---

[5] Defendant Everson also asserts in his supporting memorandum that he may not be held liable under a *respondeat superior* theory. [Record No. 24, p. 13] While Everson is correct in this regard, the Court does not find it necessary to address this issue in any detail to resolve the pending motion.

component relates to whether the doctor or other medical care provider "act[ed] with a sufficiently culpable state of mind." *Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992) (citing *Wilson v. Seiter*, 501 U.S. 294, 299 (1991)).

Allegations of medical malpractice or negligent diagnosis and treatment are not cognizable claims under the Eighth Amendment. *Estelle*, 429 U.S. at 106; *Alexander v. Fed. Bureau of Prisons*, 227 F. Supp. 2d 657, 665 (E.D. Ky. 2002). Instead, deliberate indifference is "tantamount to intent to punish." *Horn by Parks v. Madison Cnty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994). Further, when a plaintiff claims deliberate indifference to his serious medical needs but the case involves a difference of opinion between the plaintiff and a doctor regarding the plaintiff's diagnosis and treatment, no claim is stated. *See Estelle*, 429 U.S. at 107. As this Court explained in *Alexander*,

> While it appears that the plaintiff has not gotten what he wants [in terms of treatment], what he wants is not the issue. Ordering a specific type of surgery is not the appropriate function of this Court. . . . [A]t most the plaintiff has alleged a difference of opinion between the plaintiff and his health care providers regarding the expediency of a specific treatment. This does not generally create a constitutional claim.

227 F. Supp. 2d at 666 (citing *Byrd v. Wilson*, 701 F.2d 592 (6th Cir. 1983); *Tolbert v. Eyman*, 434 F.2d 625 (9th Cir. 1970)).

In the present case, there is no evidence to support either the objective or subjective component of a claim that Dr. Everson was deliberately indifferent to any serious medical need for which Hinkle received treatment. There is no evidence that any medical care provider acted toward Hinkle in a wanton manner or with an intent to punish him. *Cf. Horn by Parks*, 22 F.3d at 660. And while there is no indication that *any* medical care provider was deliberately

indifferent to Hinkle's medical condition relating to his hernias or claims of intestinal bleeding, it is important to note that Dr. Everson did not provide treatment or care to Hinkle for those conditions. Instead, Dr. Everson's treatment was confined to the period May 19, 2009, through July 21, 2009. During that period, Dr. Everson provided treatment for claims of acid reflux. Dr. Everson treated this condition with medication that had previously alleviated similar complaints. Treatment notes from July 21, 2009, indicate that the medication prescribed again successfully resolved Hinkle's specific complaints of "abdominal discomfort." [Record No. 24-2; pp. 51-53] And there is no evidence in the record to medically connect Hinkle's heartburn with his various other complaints.

While the Court concludes that claims of "abdominal discomfort" do not constitute serious medical needs under the Eighth Amendment analysis, it is apparent here that Hinkle has totally failed to offer any evidence to support the subjective component of his claim against Dr. Everson. Under the facts presented, Hinkle could not support a claim of negligence or medical malpractice against Dr. Everson *even if* that were the standard applied in establishing a claim of deliberate indifference under the Eighth Amendment. As outlined above, to overcome Dr. Everson's motion for summary judgment, much more is required. Likewise, Hinkle's claim that his inguinal hernias should have been surgically repaired – rather than treated non-surgically – fails under an Eighth Amendment analysis. Simply put, this Court will not "second guess" the decisions of medical professionals where, as here, a prisoner has received medical treatment and the dispute concerns the adequacy of that treatment. *See Graham v. Cnty. of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004) (citing *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)).

## VI.

Based on the foregoing analysis, the Court concludes that Plaintiff Oliver Hinkle has failed to offer any proof to support a claim for deliberate indifference against Defendant Ron Everson. Further, Defendant Everson is entitled to judgment as a matter of law. Accordingly, it is hereby

**ORDERED** as follows:

1. Defendant Ron Everson's motion for summary judgment [Record No. 24] is **GRANTED**; and

2. All claims asserted in this action by Plaintiff Oliver Hinkle against Defendant Ron Everson are **DISMISSED**, with prejudice.

This 27th day of May, 2011.



Signed By:
Danny C. Reeves  DCR
United States District Judge