UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

| | | |
|---|---|---|
| OLIVER HINKLE, | ) | |
| Plaintiff, | ) ) ) | Civil Action No. 3: 09-56-DCR |
| V. | ) ) | |
| KENTUCKY DEPARTMENT OF CORRECTIONS, et al., | ) ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On May 27, 2011, the Court granted summary judgment in favor of Defendant Dr. Ron Everson regarding the claims asserted against him by Plaintiff Oliver Hinkle. In relevant part, the Court concluded that Hinkle has not offered any proof that Defendant Everson acted with deliberate indifference with respect to Hinkle's medical needs. The matter is currently pending for consideration of the remaining defendants' motion for summary judgment. [Record No. 26] Having again reviewed this matter, and having considered the arguments of Defendants Kentucky Department of Corrections("KDC")/Eastern Kentucky Correctional Complex ("EKCC"), Warden John Motley, and Commissioner LaDonna Thompson, the Court concludes that there are no material issues of fact that preclude issuance of summary judgment in favor of the defendants regarding all remaining issues.

## I.

As discussed in the Court's earlier opinion, Hinkle is a state inmate confined at the EKCC. In November 2009, he filed suit against the KDC, Dr. Ron Everson, Warden John Motley, and Commissioner LaDonna Thompson based on claims that his Eighth Amendment rights were violated by virtue of substandard medical care and treatment provided during his period of incarceration. In connection with his motion for summary judgment, Defendant Everson submitted relevant medical records pertaining to Hinkle's treatment. Those records are also pertinent to the present motion.

In 1994, Hinkle was diagnosed as having bilateral inguinal hernias. During a September 2007 examination, Hinkle complained that pain related to the hernias had worsened. As a result, Dr. Bergman directed that Hinkle be placed on the bottom floor of his housing unit. Hinkle made a similar complaint during an examination on January 31, 2008. At that time, he was treated with an enema.

Hinkle received an annual physical examination on March 25, 2008. Medical records from that examination indicate that the plaintiff did not have any significant complaints. His hernias were noted as being easily reducible. Further, he denied any rectal bleeding and declined a rectal examination. However, by July 14, 2008, Hinkle complained that, within the past year, he had had two episodes of rectal bleeding during bowel movements. Based on those complaints, he was prescribed suppositories and sodium tablets for "probable internal hemorrhoids." The records further indicate that, if bleeding persisted with bowel

movements, further study might include a gastroenterology consult or colonoscopy. Again, Hinkle's hernias were noted to be reducible.

During an August 14, 2008 examination, Hinkle claimed to have abdominal bloating and constipation which increased his hernia discomfort. Medications prescribed for this condition were helpful in providing some relief. On October 3, 2008, he received an additional medical assessment and provided a history of constipation, gas and indigestion dating back several years. At that time, he asserted that the truss was not helping. However, Hinkle denied noticing blood in his stool or urine. In addition to receiving further instructions on wearing his truss and refraining from heavy lifting, pushing or pulling, Hinkle was prescribed a number of medications for gas and constipation.

Hinkle was again examined in December 2008 after complaining of pain in his abdomen, groin, and legs. Following examination on December 18, 2008, Hinkle was given Tylenol and placed in the infirmary for observation. According to progress notes dated December 23, 2008, Hinkle asserted that his hernias became more painful after he was transferred to a different cell location approximately seven to ten days earlier. These notes further indicate that Hinkle was placed in a lower level cell in the same dormitory. The medications prescribed earlier were also continued.

On March 29, 2009, Hinkle was admitted to the medical unit due to complaints that he had experienced "black and tarry" bowl movements. He also complained of pain in his umbilical abdomen and a "cutting" pain in his lower left abdomen. Subsequent testing was

negative for blood in his stool. Hinkle was discharged from the infirmary on April 1, 2009. By April 4, 2009, Hinkle's constipation had improved.

Defendant Everson evaluated Hinkle on May 19, 2009, following claims of abdominal discomfort and burning which he claimed radiated into his chest. After noting that Hinkle had previously responded well to Zantac for similar claims, he was given another trial dose of the medication and advised to follow-up with medical personnel in approximately one month. Hinkle returned on July 21, 2009, for his second visit with Dr. Everson. By this date, Hinkle's abdominal discomfort had resolved.

After July 21, 2009, Hinkle received treatment from other medical care providers at EKCC. He was examined on August 20, 2009, and again on September 24, 2009, for claims of back pain resulting in insomnia. And on October 8, 2009, he was treated for a dry cough and generalized low back pain. Progress notes indicate that Hinkle requested stronger pain medication at the time of this examination, but that request apparently was denied. This civil action was filed approximately six weeks later. Following the filing of his complaint, the plaintiff was brought for a medical appointment in a wheelchair, complaining of pelvic pain and an increase in chronic constipation. Again, medical records reflect that Hinkle's hernias were not tender and were still reducible. Hemoccult was also negative. Hinkle's symptoms were attributed to acute prostatitis.

By March 25, 2010, Hinkle stated that his hernias were not bothering him and he was not wearing a truss. Further, he denied rectal bleeding on March 25, 2010, and again on March 31, 2010. During an annual physical examination on August 20, 2010, Hinkle refused

a rectal examination. Finally, on January 8, 2011, Hinkle was examined for complaints of shortness of breath and swelling of his lower abdomen. His medications were refilled and he was advised to return as necessary.

Hinkle filed a formal grievance concerning his medical care and treatment on February 27, 2009, which focused on the refusal to surgically repair his hernias. Dr. Bergman responded to the KDC, summarizing the treatment which had been provided to Hinkle. However, Hinkle was not satisfied with Dr. Bergman's response and appealed the decision refusing surgery to the Health Care Grievance Committee at EKCC. By letter dated July 6, 2009, Dr. Scott Haas, Medical Director for the Justice and Public Safety Cabinet, Department of Corrections, advised Hinkle that his grievance had been denied.

## II.

As the Court has recognized previously, summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The moving party initially bears the burden of informing the court of the basis for its motion. *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002) (citing *Celotex*, 477 U.S. at 323). The movant does so by bringing forward the relevant portions of the record which establish the absence of a genuine issue of material fact. *Id.* Once the movant has satisfied its burden, the nonmoving party must go beyond the pleadings and produce specific evidence to demonstrate that there is a genuine issue of material fact. *Id.* The nonmoving party must do more than cast some "metaphysical doubt"

on the material facts. *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). He must present significant, probative evidence of a genuine issue in order to defeat the motion for summary judgment. *Id.* In reviewing the motion, the Court must view all facts and inferences in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587. Here, however, Hinkle has failed to offer any evidence which refutes any of the information contained in the medical records submitted by Defendant Everson and relied upon by the remaining defendants.

### III.

To establish a viable claim of inadequate medical care or treatment under the Eighth Amendment, a prisoner-plaintiff must offer some evidence that the particular defendant acted, or failed to act, with "deliberate indifference to serious medical needs." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002). Deliberate indifference is "more than mere negligence, but 'something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *Foy v. City of Berea*, 58 F.3d 227, 232 (6th Cir. 1995) (quoting *Farmer*, 511 U.S. at 835). It may be shown by prison doctors "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104–05. Further, deliberate indifference contains both objective and subjective components. *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001). Under the objective component, the Court must determine whether the alleged deprivation was sufficiently serious. The

subjective component relates to whether the doctor or other medical care provider "act[ed] with a sufficiently culpable state of mind." *Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992) (citing *Wilson v. Seiter*, 501 U.S. 294, 299 (1991)).

Allegations of medical malpractice or negligent diagnosis and treatment are not cognizable claims under the Eighth Amendment. *Estelle*, 429 U.S. at 106; *Alexander v. Fed. Bureau of Prisons*, 227 F. Supp. 2d 657, 665 (E.D. Ky. 2002). Instead, deliberate indifference is "tantamount to intent to punish." *Horn by Parks v. Madison Cnty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994). Further, when a plaintiff claims deliberate indifference to his serious medical needs but the case involves a difference of opinion between the plaintiff and a doctor regarding the plaintiff's diagnosis and treatment, no claim is stated. *See Estelle*, 429 U.S. at 107; *Alexander*, 227 F. Supp. 2d at 666 (citing *Byrd v. Wilson*, 701 F.2d 592 (6th Cir. 1983); *Tolbert v. Eyman*, 434 F.2d 625 (9th Cir. 1970)).

Here, there is no evidence to support either the objective or subjective component of a claim that any medical care provider was deliberately indifferent to any serious medical need for which Hinkle received treatment. Further, there is no evidence that any medical care provider acted toward Hinkle in a wanton manner or with an intent to punish him. *Cf. Horn by Parks*, 22 F.3d at 660. As the Court concluded in connection with Dr. Everson's motion for summary judgment, claims of "abdominal discomfort" do not constitute serious medical needs under the Eighth Amendment analysis. And as the above factual summary makes clear, Hinkle has not offered any evidence to support the subjective component of his claim against any defendant named in this proceeding.

**IV.**

Hinkle has received substantial and continuous treatment for his medical complaints which form the basis for this action. Further, he has failed to offer any proof to support a claim for deliberate indifference against any named defendant. And because the plaintiff has failed to establish a viable claim against any medical care provider, the Court need not address issues of vicarious liability. Accordingly, it is hereby

**ORDERED** as follows:

1. The Defendants' motion for summary judgment [Record No. 26] is **GRANTED**;

2. All claims asserted in this action by Plaintiff Oliver Hinkle against all named defendants are **DISMISSED**, with prejudice;

3. A final judgment will be entered this date.

This 27th day of June, 2011.



Signed By:
*Danny C. Reeves* DCR
United States District Judge